No. 44936.—Petitions 5398–R, etc., of J. A. Forrest Co. et al. (Pembina).

DALLINGER, Judge: These petitions were filed under section 489, Tariff Act of 1930, for remission of additional duties imposed by the collector of customs at the port of Noyes, N. D., imposed on bran shorts and other meal feeds imported from Canada by the J. A. Forrest Co. and entered at less than the final appraised values thereof.

These petitions were originally heard before Cline, Judge, on April 20, 1938, who, speaking for the Third Division of this court, denied the petitions. (See *J. A. Forrest Co. et al.* v. *United States*, Abstract 38394, 73 Treas. Dec. 1251.) The cases are now before us as a result of a rehearing granted the petitioners.

At the rehearing, held at Minneapolis, Minn., on February 21, 1940, in addition to the evidence taken at the original hearing, the petitioners offered in evidence the testimony of two witnesses. The first, J. A. Forrest, Jr., a partner in the petitioning firm, testified that the firm's entries at Noyes are made by W. F.

Mackay, the firm's customs broker at that place; and that he had always intended to keep himself informed as to the market values of merchandise imported by said firm. On being asked how he did that, the witness testified in part as follows:

A. * * * A person in the trade is informed of market prices from day to day. Of course, we received letters from mills, telegrams from mills, offering feeds, and we have our own prices which we put out, counter offers to mills. That is the normal way we have in our business, keeping track of prices from day to day.

Q. Do you rely to any extent on the statement on the invoices as to the market values?—A. Yes. They are all large mills, reputable concerns, and they report values on the invoices, so that the customs broker wherever he might be, would be able to enter the shipment, so that the United States Government would get the correct amount of duty, because the prices at the bottom of the consular invoice will not necessarily agree with the sales price at the top of the consular invoice.

Q. Do you mean that at times the market value indicated on the invoice is more than that which you paid for the merchandise?—A. Yes.

Q. And at times it is less?—A. Yes.

Q. Now, what instructions have you given to your shippers as to the fair market value, or to indicate the fair market value?—A. Well, first, we do not establish the Canadian values ourselves. We are the buyers and they are the sellers. They report the values to the different districts which you might want, Calgary or Alberta. Those mills report values to the United States Consul once a week, and our instructions to the mills are always to give the value at the bottom of the consular invoice, either the home market price or the export value price, to keep it high enough so that the shipment will be entered at the correct value.

Q. Did you give any instructions to W. F. Mackay, of Noyes, as to the values at which merchandise should be entered? I am referring now to general instructions; I am referring to 1935 and 1936.—A. I asked him to be sure to watch the values at the bottom of the consular invoice.

Being shown the invoice in petition 5398–R, the witness proceeded to testify in part as follows:

Q. Now, do you know what happened between the date when that invoice was made up and the date when the car crossed the border?

    *        *        *        *        *        *        *

A. The value increased while the shipment was in transit, from the port of origin to the port where it was cleared.

Judge DALLINGER. In all of your instructions was it your intention to have the entry made at the real proper value; is that right?

The WITNESS. Yes, sir.

Judge DALLINGER. And you assumed that the prices that you had asked the shipper to put on the bottom of the consular invoice were the proper values in Canada at that time, at the time of exportation; is that right?

The WITNESS. Yes, sir.

The second witness, William Fraser Mackay, testified that he had been a customs broker at Noyes, N. D., for the past 40 years; that he made the entries in the instant cases; that he tried as far as possible to keep in touch with the market values of imported merchandise through the appraiser and also through other shipments that passed through his hands. The witness then testified in part as follows:

Judge DALLINGER. Did you receive instructions from Mr. Forrest in regard to what you should do when these shipments came in?

The WITNESS. Yes, your Honor.

Judge DALLINGER. What were those instructions?

The WITNESS. To make entries on the consular invoice value; that there were times when the consular invoice did not arrive with the shipments, and in such cases we received shippers' pro forma invoices, and we made entry on that, and presented the consular invoice later.

Judge DALLINGER. If the consular invoice showed a higher value than the pro forma invoice did you seek to amend the entry?

The WITNESS. Always, yes, sir.

By Mr. SCHWARTZ.

Q. At that time, or in the case of these particular entries were you able to amend the entry?—A. No.

Q. Why not?—A. Because the entry had been sent in from Noyes to the head office.

Q. Do you mean that the entry had been sent to the appraiser?—A. Yes, sir; the entry had been sent to the head office.

\*     \*     \*     \*     \*     \*     \*

Judge DALLINGER. Do you mean sent to Minneapolis?

The WITNESS. No; to Pembina.

By Mr. SCHWARTZ.

Q. Were the arrangements which were in force at that time the same as today in connection with the amended entries?—A. No, it was not.

Q. Is it easier to amend entries today?—A. Yes; it is; and the appraiser is allowed to give us information now.

Q. And at that time—A. He was not.

Q. Now, in the case of a car which had increased in value between the date of the invoice and the date when the car was entered, aside from the sources which you have mentioned for obtaining information, was there anything which you could have done to have found out what the correct value was?—A. No, there was not.

Q. In making these entries did you do all that you possibly could in arriving at the correct dutiable value?—A. I did.

Q. Did you intend to defraud the Government?—A. I did not.

Q. Or to deceive the appraiser?—A. No.

Upon the entire record we are satisfied that the petitioners herein acted in good faith, and that the entries of the merchandise at less than the final appraised value was without any intention to defraud the revenues of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. The petitions are therefore granted.

This conclusion is in harmony with that reached by the Third Division, speaking through Judge Keefe, in Abstracts 39200 and 39201, 1 Cust. Ct. 373; and also in harmony with the conclusion reached by this Division in the matter of petition 5762-R, decided November 6, 1940, Abstract 44694, in all of which the petitioners and the merchandise were the same and the evidence substantially identical.